The STATE of Ohio, Appellee,

v.

GOULD, Appellant.

[Cite as *State v. Gould* (1994), 95 Ohio App.3d 634.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65434.

Decided Sept. 29, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Edward F. Feran,* Assistant Prosecuting Attorney, for appellee.

*Henry J. Hilow,* for appellant.

HARPER, Judge.

Appellant, Michael S. Gould, appeals from his conviction of drug trafficking by the Cuyahoga County Court of Common Pleas. He was sentenced to six to twenty-five years in jail. For the reasons that follow, we affirm.

## I

Agent Warren Capps of the Westshore Enforcement Bureau testified that he was investigating appellant as a result of information he had received from Cuyahoga County Crime Stoppers. Capps contacted an informant whose role was to introduce him (the buyer) to appellant (the seller). The meeting which was arranged by the informant was to take place on June 26, 1992 at the Scottish Inn.

Prior to the meeting, the parties agreed that the transaction would involve two ounces of crack cocaine for $3,000.

Capps arrived at the Scottish Inn at about 9:00 p.m. on June 26, 1992 in an undercover vehicle. He was wearing a body wire for monitoring purposes. The informant, who appellant knew as Bob, pulled into the parking lot shortly after Capps. Appellant came to the driver's side of Capps's vehicle and asked him for the money. Capps refused to give him the money. Appellant informed Capps that his supplier, Willie Norman, would not participate in the transaction without the money. Appellant told Capps to remain in the parking lot for five minutes and then go to Room 219.

Shortly after appellant walked away, Kim Farrah approached Capps and requested that he follow her to the motel room. She told Capps that she had "seen the stuff." She insisted that the supplier would leave if he did not go with her. Capps followed Farrah to Room 219.

Farrah entered the room, but Capps was standing halfway into the room. Willie Norman, Farrah, and appellant were in the room. Norman presented Capps with a brown bag. Capps had him take the white powder contents out of the bag. The white powder was later identified as cocaine. Capps gave Norman $3,000 in marked bills. Appellant asked Capps for some of the cocaine which he refused to give him. All the people in the room including Capps were arrested.

Appellant testified that he moved into the Scottish Inn on June 18, 1992 in order to get away from drug activities in his neighborhood. He saw Bob, whom he had known for about ten years, at the Scottish Inn. They decided to room together and Bob later moved to a first floor room after Farrah came to stay with appellant. On June 24, 1992, appellant called Willie Norman and purchased $40 worth of crack cocaine. He smoked it with Farrah and Bob. He then learned that there was going to be a drug drop off for Bob's friend. Bob did not want the transaction in his first floor room because it would appear suspicious.

On the date in question, Norman called appellant, and shortly after that, Bob called him also. He later went to the parking lot, where Bob introduced him to a white man (Capps), whom Bob identified as a friend. He told Bob and his friend to come up to the room in five minutes when Farrah would be out of the shower.

Appellant came up to the room and saw Norman. Farrah had gone down to the parking lot to get Bob and his friend. Norman asked him to sell two ounces of cocaine to Bob's friend, and he refused. He took his clothes to the laundry room and was arrested in the lobby where he had gone to get change for the washing machine. He denied being in Room 219 with Bob, Norman, and Capps.

## II

Appellant, in his sole assignment of error for our review, states that:

"The trial court erroneously instructed the jury that the jury could convict the appellant based upon what a person would foresee as the result of his conduct and upon a finding of a lesser culpable mental state than 'knowingly', which is the culpable mental state required to sustain a conviction for R.C. 2925.03(A)(7), and thereby deprived the appellant of his constitutionally guaranteed right to due process of law."

■ Appellant argues that:

"The instruction was brief and left the jury with an impression that in order to find Appellant guilty, they needed only to find Appellant's actions were merely probable and foreseeable and not 'knowingly'."

We disagree.

■ R.C. 2925.03, trafficking in drugs, contemplates a precise stated degree of culpability, to wit, knowingly. This culpable mental state cannot be ascribed to the accused nor can a conviction lie unless the state offers proof that circumstances exist which show that the accused knowingly committed the act for which he is accused. To that end, the Ohio legislature defined "knowingly" in R.C. 2901.22(B) as follows:

"(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Further evidence of what the legislature intended the definition of "knowingly" to reflect is illustrated in the Committee Comment which states as follows:

" 'Knowledge' is cast in this section in terms of an awareness of the probability that one's conduct will cause a certain result or be of a certain nature, or that certain circumstances exist. * * *

" * * *

"Basing the definition of knowledge on probability and the definition of recklessness on likelihood is intentional. Something is 'probable' when there is

more reason for expectation or belief than not, whereas something is 'likely' when there is merely good reason for expectation or belief." (Emphasis added.)

Thus, unlike appellant's understanding, "knowingly" is cast on probability; anything short will create an unwarranted defense to a culpable mental state of a criminal mind. We do not believe that such defense will serve the ends of justice.

In the instant case, the trial court instructed the jury as follows:

"A person acts knowingly, regardless of his [or her] purpose, when he [or she] is aware that his [or her] conduct will probably cause a certain result or he [or she] is aware that his [or her] conduct will probably be of a certain nature. A person has knowledge of circumstances when he [or she] is aware that such circumstances probably exist."

A review of the trial court's instruction reveals that its definition of "knowingly" is word for word as the definition in R.C. 2901.22(B). The trial court's instruction cannot be unconstitutional when the statute from whence it came is constitutional.

Accordingly, we find no error in law or in fact in the instruction, so we overrule appellant's sole assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

NAHRA, C.J., and KRUPANSKY, J., concur.